320 So.2d 652

**RAY HUGHES CHEVROLET, INC., a corp.**

**v.**

**Sharon K. GORDON.**

**SC 1107.**

Supreme Court of Alabama.

Oct. 3, 1975.

Cassady & Fuller, Enterprise, for appellant.

Kenneth R. Cain, Ozark, for appellee.

SHORES, Justice.

Sharon K. Gordon, appellee, brought suit against Ray Hughes Chevrolet, Inc., appellant, for damages resulting from the conversion of appellee's automobile.

Sharon K. Gordon sued Ray Hughes Chevrolet, Inc., claiming $15,000 damages for the conversion of her 1972 Vega automobile. The complaint, as amended, claimed punitive damages in that amount. Defendant, by answer, denied the allegations of the complaint, asserted that it held the automobile under a lawful claim and filed a counterclaim for $216.62, claimed to be due by the plaintiff for work and labor performed by the defendant on her automobile. The jury returned a verdict in favor of the plaintiff in the amount of $14,783.38. The appeal is from a judgment entered in that amount.

The record indicates that Miss Gordon bought the automobile from Hughes in June of 1972 for a total price of $3,174.27. After the automobile had been driven some 11,000 miles, she experienced transmission trouble with the car and took it to Hughes for repair. There was some conversation at this time about whether the automobile was still under warranty, but Miss Gordon was informed that if it was not, the cost of repairs would be no more than $125.00.

When she returned for the automobile, the bill for repairs which was presented to her was $216.62. Miss Gordon testified that she told employees at Hughes that she was surprised that the bill was so much, but arrangements were worked out whereby she was given 30 days in which to pay this amount.

Six days after this transaction, Miss Gordon again experienced trouble with the

**640**

car and returned to Hughes Chevrolet. At this time, representatives of Hughes drove the car and told her that the trouble she had experienced with the car could not be fixed, that the trouble was due to the fact that the car was a four cylinder car and the trouble was just not repairable.

It was Miss Gordon's testimony that she then prepared to leave and was informed by one Mr. Medley, the service manager, "'I am sorry, Miss Gordon, we can't let you leave.'" It was her testimony that the service manager said: "'You questioned our honesty and now we are questioning yours, and I have been given instructions to not let you leave until you pay your bill.'"

It was Mr. Medley's testimony that he had been instructed by Mr. Hughes, president of the defendant company, not to let Miss Gordon have the car until the bill was paid. Mr. Hughes did not deny that those were his instructions. On the contrary, he testified that ". . . I told them not to release that car without being paid for the bill."

In arguing for reversal, the appellant insists that the trial court erred in denying its motion for directed verdict, and further erred in denying its motion for new trial. The thrust of appellant's argument is that there is no evidence in the record to justify the jury in awarding to the plaintiff punitive damages. That contention is based upon the argument that punitive damages can be awarded only where there is evidence that the conversion was accompanied by insult, rudeness, malice or oppression, and appellant claims that the record is devoid of any evidence to indicate that any employee of Ray Hughes Chevrolet was rude or threatening in his dealings with Miss Gordon.

■ It is true that this court has frequently said that the award of punitive damages, while discretionary with the jury, is permissible where the evidence shows legal malice, willfulness, insult, or other aggravating circumstances. *Russell-Vaughn*

*Ford, Inc. v. Rouse,* 281 Ala. 567, 206 So. 2d 371 (1968); *Roan v. Smith,* 272 Ala. 538, 133 So.2d 224 (1961).

■ However, it has never been stated that one must show, before a jury issue is made out on the question of punitive damages, that the intentional wrongful act must be accompanied by rudeness before punitive damages are allowable.

The Court of Civil Appeals was challenged on rehearing in *Parker v. Sutton,* 47 Ala.App. 352, 357, 254 So.2d 425, (1971), for the following statement contained therein:

"To such compensatory damages [awardable in a conversion case] the jury may add punitive damages if the trespass or conversion was willful, fraudulent, done in known violation of law or attended with circumstance of malice, insult or disregard of the rights or interest of the mortgagor [plaintiff]."; citing *Roan v. Smith,* supra; *Russell-Vaughn Ford, Inc.,* supra.

In its opinion on rehearing, that court, speaking through Judge Wright, said:

"Until called to our attention by appellants in this instance we had not thought of the following quotation from the case of *Roan v. McCaleb,* 264 Ala. 31, 84 So. 2d 358, as being in the conjunctive.

"'If the conversion was committed in known violation of the law and of plaintiff's rights *with* circumstances of insult, or contumely, or malice, punitive damages were recoverable in the discretion of the jury. (Emphasis Supplied).'" (47 Ala.App. at 359, 360, 254 So.2d at 431)

We have found no better statement of the law than the following, which we now adopt from Judge Wright's opinion:

"Upon consideration now we do not conclude that the conjunctive is intended or required in the above quotation. It appears from a legal sense the statement is redundant rather than conjunctive. It

would be difficult, if not impossible, to conceive of a conversion or a trespass committed in *known* violation of the law and of plaintiffs' rights not to be accompanied by insult, contumely or malice. The 'known,' intentional and 'willful' violation of the law and of plaintiffs' rights in and of itself is legal insult, contumely and malice. . . ." (47 Ala.App. at 360, 254 So.2d at 431)

This is not to say that the conduct of the defendant accompanying a wrongful act has no evidentiary value. It is entirely appropriate for the jury in its assessment of punitive damages, if any, to consider any aggravating circumstances such as verbal insult, rudeness, etc., or the lack of such conduct. Indeed, evidence of this lack of personal abuse was properly admitted in the instant case. But the absence of any such aggravating circumstances does not legally invalidate the injured party's claim for punitive damages based on intentional misconduct. To hold otherwise would contravene the long and well-established rule allowing punitive damages for wantonness when the wrongful act causing injury may be as impersonal as the intentional wrongful operation of an automobile.

In the instant case, there was evidence from which the jury could have concluded that the plaintiff's automobile was converted by the defendant in known violation of her rights and in violation of the law. In fact, the evidence is not contradicted that the defendant withheld her automobile from her because she had not paid the bill, which was not then due. Of course, it had no right to hold her automobile in payment of the bill, even had it then been due, having previously released it to her after the debt was incurred. With this latter proposition the appellant has no argument.

There is evidence in the record before us which justified the jury in believing that the plaintiff's automobile was converted by the defendant, willfully and in known violation of her rights, or in reckless disregard thereof, authorizing in its discretion the award of punitive damages.

That being so, we find no error in the trial court's refusal to grant a new trial on this ground.

Finding no error to reverse, the judgment appealed from is affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, BLOODWORTH, MADDOX and JONES, JJ., concur.

FAULKNER, ALMON and EMBRY, JJ., concur in the result.